IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RUBY MASKEY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No.: 24-cv-4872 |
| ) | |
| **CLARITY CLINIC, PLLC** ) | |
| **f/k/a CLARITY CLINIC, LLC** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**NOW COMES** the Plaintiff, RUBY MASKEY, by and through her undersigned attorney, Arthur R. Ehrlich of the Law Offices of GOLDMAN & EHRLICH, CHTD., and as her Complaint against Defendant, CLARITY CLINIC, PLLC, f/k/a CLARITY CLINIC, LLC, states as follows:

1. This is an action brought under Title VII, 42 U.S.C. § 2000e *et seq.*, for discrimination based on Plaintiff's national origin and retaliation based on a hostile work and based on her termination. Jurisdiction exists under 42 U.S.C. § 2000e *et seq.*. Venue exists because Plaintiff and Defendant reside in the Northern District of Illinois.

2. Plaintiff filed a timely charge for discrimination with the Equal Employment Opportunity Commission (EEOC) and the EEOC issued a Right to Sue letter to Plaintiff which was dated April 1, 2024, and Plaintiff received a few days thereafter.

3. Plaintiff, RUBY MASKEY, resided in the Northern District of Illinois and worked for Defendant under a Visa and work permit at all times relevant to this complaint. Plaintiff is a citizen of Australia.

4. Defendant, CLARITY CLINIC, PLLC, f/k/a CLARITY CLINIC, LLC, is a PLLC organized under the laws of the State of Illinois.

5. Plaintiff began working for Defendant in or about February of 2021 and her most recent position was digital marketing manager until her termination on October 5, 2023.

6. Plaintiff met or exceeded Defendant's reasonable performance expectations in her position at all times relevant to this complaint.

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION -- HOSTILE WORK ENVIRONMENT

7. Defendant engaged in a continued pattern and practice of disparate treatment and repeated harassment against Plaintiff based on her national origin which created a hostile work environment.

8. Defendant's actions against Plaintiff included frequently subjecting her to an unreasonable level of scrutiny, holding her to different and often unreasonable performance expectations and standards, excluding her from meetings relevant to her position, and frequently mocking, belittling, yelling, and trying to intimidate Plaintiff during her employment.

9. Beginning in April or May of 2021, Defendant's COO and HR Manager began mocking Plaintiff's accent, and insisted that Plaintiff should find this amusing though she clearly did not find it amusing. The COO continued to mock her accent until January 2023 when he was replaced with a new COO.

10. Defendant paid Plaintiff less than American co-workers despite Plaintiff having equal or greater experience and performing at a high level.

11. In May of 2022, Defendant's CEO engaged in a repeated pattern of verbal abuse towards Plaintiff. Rather than addressing this matter, the COO and HR manager told Plaintiff she

should learn how to deal with the abuse as it would continue. Defendant's CEO continued to verbally abuse Plaintiff throughout her employment. American employees were not treated in this same manner.

12. The verbal abuse, which was not directed at American employees, continued into the Fall of 2023. Examples include but were not limited to:

    a. In the summer of 2023 during a meeting with other employees, Defendant's CEO shouted at Plaintiff and directed her to stand up and prove that she could read a slide during a presentation.

    b. When Plaintiff stated that bookings were down during the week of July 4th because of the holiday, the CEO warned Plaintiff to "stop making up bullshit lies and excuses."

    c. On or about August 8, 2023, the CEO called Plaintiff "stupid," yelled and screamed at her, and on August 22, 2023, he accused her of lying without any rationale basis.

    d. In or about August of 2023, as Plaintiff discussed her strategy for increasing customer traffic to Defendant's website by posting blogs and content, the CEO insulted Plaintiff in front of other employees, warned her not to use ChatGPT for these blogs, and told her to quickly finish her presentation because "no one cares" what she was saying.

13. In June of 2022, Defendant's CEO warned that Defendant would not celebrate Juneteenth and that he would terminate any employee who asked for a day off on Juneteenth.

14. Beginning in or about December 2022, Defendant's CEO began excluding Plaintiff from social functions, team meetings, and Senior Leadership meetings. In December 2022, he specifically ignored Plaintiff while inviting several American employees to a vendor's holiday party.

15. In the summer of 2023, Plaintiff was excluded from all Senior Leadership meetings though she had attended these meetings in the past. Information relevant to Plaintiff's performance and projects were discussed at these meetings making it more challenging for Plaintiff to perform her work. Yet, she was still expected to complete her projects despite being excluded from these important meetings.

16. In or about August of 2023, Defendant began assigning Plaintiff labor intensive tasks to complete within an unreasonably short deadline and then held her accountable if she did not meet these unreasonable deadlines.

17. On August 24, 2023, the CEO made racist and inappropriate jokes about the use of pronouns in provider's profiles, and joked about having patients choose their provider based on their color, be they white, brown or black, and then laughed at his own comments.

18. In September of 2023, Defendant's CEO often sent vague emails about projects for Plaintiff, which were followed shortly thereafter by emails from the COO demanding to know whether Plaintiff completed the vague assignments just sent by the CEO. The CEO then emailed at 5:00 p.m., Plaintiff's usual stop time, insisting that Plaintiff revise the vague assignment he gave her, followed by the COO insisting it was not done as expected, despite vague and last minute requests for changes.

19. On or about September 20, 2023, Plaintiff was issued a performance improvement plan (PIP) falsely claiming, among other things, that Defendant was not satisfied with some of her

projects, despite the fact that the COO had reviewed and approved of these projects completed by Plaintiff.

20. Plaintiff asked for specific examples of how her work or projects were not meeting Defendant's expectations but was not provided with specific examples.

21. While Plaintiff was on the PIP, the CEO and COO kept assigning her additional tasks to complete within unreasonable deadlines which required her to work in excess of the 40 hours per week she was expected to work.

22. On September 26, 2023, one of Plaintiff's managers raised his voice at Plaintiff stating that "in this country, this is how we do things."

23. All of these actions created a hostile work environment for Plaintiff as it adversely affected her work environment and health. Defendant did not treat American employees in this manner.

24. Defendant's actions were willful and malicious, and violated Title VII, 42 U.S.C. §2000e *et. seq.*. Defendant's conduct has caused Plaintiff to lose salary and other employment benefits and caused Plaintiff emotional distress.

25. Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

    A. Actual damages for lost salary and employment benefits in an amount in excess of One Hundred Thousand Dollars ($100,000.00);

    B. Compensatory and punitive damages in an amount of Three Hundred Thousand Dollars ($300,000.00);

      C.      Attorney's fees and costs; and

      D.      Such other relief as this Court deems appropriate.

## COUNT II
## TERMINATION BASED ON NATIONAL ORIGIN

1-23.    Plaintiff realleges ¶¶1-23 of Count I, above, as ¶¶ 1-23 in this Count II.

24.    On or about October 5, 2023, Defendant terminated Plaintiff.

25.    Plaintiff was told that her termination was not related to her PIP, and that her position was being eliminated. Defendant then posted a new position that involved many of the same duties performed by Plaintiff.

26.    Defendant terminated Plaintiff based on her national origin. Defendant's stated reasons for her termination were a pretext for discrimination based on her national origin.

27.    Defendant's actions were willful and malicious, and violated Title VII, 42 U.S.C. §2000e *et seq.*. Defendant's conduct has caused Plaintiff to lose salary and other employment benefits and caused Plaintiff emotional distress.

25.    Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

      A.      Actual damages for lost salary and employment benefits in an amount in excess of One Hundred Thousand Dollars ($100,000.00);

      B.      Compensatory and punitive damages in an amount of Three Hundred Thousand Dollars ($300,000.00);

      C.      Attorney's fees and costs; and

      D.      Such other relief as this Court deems appropriate.

## COUNT III
## RETALIATION

1-18. Plaintiff realleges ¶¶1-18 of Count I, above, as ¶¶ 1-18 in this Count III.

19. On or about September 18, 2023, Plaintiff submitted a complaint of harassment and discrimination to Defendant's human resource (HR) department.

20. Shortly after Plaintiff complained to HR, she was informed later that same day that she must move out of her office to a different location.

21. In the afternoon of September 18, 2023, after her complaint to HR, Plaintiff was notified that she could not attend two important department-wide meetings. Being excluded from these meetings would hinder her ability to fully perform her position.

22. On or about September 20, 2023, Plaintiff was issued a performance improvement plan (PIP) falsely claiming, among other things, that Defendant was not satisfied with some of her projects, despite the fact that the COO had reviewed and approved of these projects completed by Plaintiff.

23. Plaintiff asked for specific examples of how her work or projects did not meet Defendant's expectations but was not provided with specific examples.

24. While Plaintiff was on the PIP, the CEO and COO kept assigning her additional tasks to complete within unreasonable deadlines which required her to work in excess of the 40 hours per week she was expected to work.

25. Plaintiff was told that although she had been performing well, she would still be terminated because of her complaint to HR.

26. On or about October 5, 2023, Defendant terminated Plaintiff.

27.     Plaintiff was told that her termination was not related to her PIP, and that her position was being eliminated.  Defendant then posted a new position that involved many of the same duties performed by Plaintiff.

28.     Defendant did not take these actions against employees who did not file complaints of discrimination.

29.     Each of these aforementioned acts were taken against Plaintiff in retaliation for complaining about discrimination.  Defendant's actions were willful and malicious.

30.     Defendant's actions violated 42 U.S.C. § 2000e *et seq*., caused Plaintiff to lose salary and other employment benefits and has caused Plaintiff emotional distress.

31.     Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

   A.   Actual damages for lost salary and employment benefits in an amount in excess of One Hundred Thousand Dollars ($100,000.00);

   B.   Compensatory and punitive damages in an amount of Three Hundred Thousand Dollars ($300,000.00);

   C.   Attorney's fees and costs; and

   D.   Such other relief as this Court deems appropriate.

*Arthur R Ehrlich*
_____
Arthur R. Ehrlich of the Law Offices of
GOLDMAN & EHRLICH, CHTD, as attorney
for Plaintiff RUBY MASKEY

Arthur R. Ehrlich
Law Offices of Goldman & Ehrlich
53 West Jackson Blvd., Suite 815
Chicago, IL 60604
(312) 332-6733
arthur@goldmanehrlich.com